Ms. Lane. Good morning, Your Honors. May it please the Court, Najla Lane on behalf of the Plaintiff Appellant Barry J. Epstein. We are here today asking that this Court reverse and remand the District Court's dismissal of Plaintiff's complaint against Paula Epstein and J. Frank pursuant to Rule 12b-6, Failure to State a Claim. This dismissal was improper and we are before you, before this Court, de novo, Your Honor. We believe that the lower court was improper when considering a 12b-6 motion to dismiss for failure to state a claim that the Court to construe a complaint in the light most favorable to the Plaintiff and draw all plausible inferences in the Plaintiff's favor and assume as true all allegations in the complaint. We believe that lower court injected its own judgment when dismissing the matter as a court deciding a motion to dismiss must not make any judgment about the probability of the Plaintiff's success for a complaint. We also believe that the District Court's interpretation of the Statute 18 U.S.C. 2511-1 A, C, and D was inconsistent with the plain language and with the intent of the Congress of the VIATAP Act that is currently amended under Patriot Act, Your Honor. The lower court held that the definition of intercept in 2511 of the VIATAP Act requires acquisition to be contemporaneous with the transmission of the corresponding communications. The judge therefore dismissed Count 1 and 2 against Paula Epstein because he determined that the shortest interval between the emails at issue was that may have been acquired contemporaneously, saying that their existence was pure speculations. The District Court also dismissed Count 3 and 4 against J. Frank which alleged unlawful disclosure and use, finding that these claims necessarily failed because, again, the emails were not contemporaneously acquired pursuant to the Act. Further, the court held even if these emails were acquired contemporaneously, Plaintiff's claim against J. Frank for unlawful disclosure would fail because Barry cannot prove that he was damaged when J. Frank disclosed the communications to Barry's own attorney. There was never a consent given, so we believe that that was erroneous. Finally, the judge noted that Barry's claim against J. Frank for use would also fail because Barry did not allege facts to support a finding that J. Frank used these emails in violation of the Act. We believe that the judge was wrong because these emails were being used already and there was a threat to be used at the trial. However, the exhibits that we have already withheld at least 18 of Barry's acquired emails. These were the emails that Paula had acquired, either we don't know how and when and what because discovery was denied. She forwarded them to her own email account and then she provided it to her attorney to use it as her advantage during the divorce proceedings. Are they divorced now? No, Your Honor. It is middle in the divorce. What? It is middle in the divorce proceeding right now. We are in the trial. We started the trial and then we will proceed next week. But we know that Barry's emails were actually the benefit to inspect or investigate or hire our experts to see worse and about. We believe that was improper to dismiss a 12B6 motion below. Right. I don't know that we can draw any inferences from the photocopies about contemporaneous transmission or whether the emails were intercepted from the get-go. In other words, at the time of transmission. Because they're just that. They're copies and photocopies and they appear to suggest, at least to me, that there was some later re-forwarding by the wife. The allegation in the complaint is that she set up one of these rules on the computer system that her husband used. She accessed it without authority and set up this forwarding rule so that she would automatically receive the emails that were sent to her husband. All of them is the allegation, not just the ones having to do with the infidelity or the alleged infidelity. And that, it seems to me, brings it squarely within the case with the last name I can't pronounce, Muscovich, the case from our court that interprets this part of the statute and the meaning of intercept. And it seems to me that that resolves the case, at least at the motion to dismiss stage, and in a way that's contrary to the district court's dismissal. The allegation is there. That's enough for purposes of the pleadings. And then you're entitled, on behalf of your client, to take discovery about what she actually did as a technical matter to set up this forwarding device. Correct. We never had the benefit of the discovery to find out how and what. Did you take depositions in the divorce? No, we weren't allowed to even open the door to that. Judge Durkin even... Well, no, I mean in the divorce case. Were there depositions in the divorce case where this line of questioning might have been pursued? No, Your Honor. We didn't utilize this because we believe this is illegally obtained information. It wouldn't be even admissible to use at trial. In the divorce case. Correct. Because this is separate from... Because of the no-fault limitations. Exactly. We couldn't. But what we know is that Paula Epstein has a master's degree and she's a librarian and she's got the skills, and she also has multiple emails. We don't know from which email to which email. All we know is within two minutes, it's almost impossible for her to... It's impossible for the plaintiff to leave the computer and for her to... So there were so many unknowns. There's a lot of questions. And that's why we believe that when lower court made the decision to dismiss, it shouldn't have dismissed it because unless there is beyond doubt that the plaintiff cannot prove its case, that it should be dismissed. But we had a lot of doubt. How should the law protect adulterous emails from a guy's spouse? Again, Your Honor, we have not determined or there is never an allegation that it was adulterous. The emails that were intercepted in itself did not explicitly or even imply that there is any adulterous relationship. It just shows that there were multiple emails. Well, if there's not, then what's the harm? What's the harm to him? Well, then that would clearly violate the act that... What's the harm? Well, the harm is that... that are not embarrassing or anything and don't disclose any improper behavior. Why would you care or why would the law care if someone happens to get hold of them? Your Honor, they were embarrassing. Especially a spouse. Yes, Judge Postol, but they were embarrassing. It's hard for a spouse to say, well, you know, I'm not really monogamous and I want to play around. So, you know, I'll tell my wife, I don't want you looking at my emails under any circumstances. Your Honor... And then she looks because she's suspicious. The law should get involved in this kind of stuff? Nothing better for lawyers and judges to do? Your Honor, first of all, it is the law to protect... Well, give me a reason or unless the law is asinine, which it often is, I'm afraid. Why are judicial resources wasted so that a spouse can conceal embarrassing activities, I assume, you know, adultery, from his wife? What's the purpose of that? The purpose of that is that the Act 2511 specifically... I'm asking for a reason for this statute. Is this a really dumb statute or is there some basis in common sense, morality, what have you? It is a privacy reason. Yes, I know. But if someone sends an email to another person saying, let's go murder X. Now, do you think the right of privacy protects that email? I don't believe, Your Honor, that it is exactly or precisely the same situation. Well, you know, actually adultery is still a crime in a number of states. So, if the spouse is monitoring, wife is monitoring her husband's emails for adultery, why should that be protected activity? Because the law outlaws that, that any individual... You just say the law, but I'm asking for a reason for the law. Well, if the spouse had doubted the husband's infidelity or anything such as, she could confront and get the straight answer with a communication. If she suspects her husband is not faithful, then that's when you start filing for divorce proceedings. But you don't bring it up on yourself to go spy on people. Why not? Because... Who else is going to spy? Well, otherwise we wouldn't have any loss to, why do we put passwords in our accounts? Why do we put a stamp on an envelope and we send it out if we don't have no right for privacy? These are our... The right to privacy is limited. You don't, as I say, you don't guarantee privacy to criminals. But I don't think that this act in itself is criminal to communicate with your female associates. Well, it's certainly improper. Your Honor, there was not even an evidence of... Spying on your husband's... I don't know why monitoring your husband's adulterous activities is different from monitoring criminal communications,  as I stated, Your Honor. Although there was no adultery conducts or expressions in the emails that were exchanged, we are under the Constitution protected. Not only for the criminal acts... No, because you think the Constitution protects all private communications, even if they're criminal.  That's why we have the law enforcement surveillance, who can, with probable cause and with the right warrant, go search whatever they need to do to seize any criminal activity. This was not a criminal activity other than an individual is entitled to their own privacy when they have pass-controlled email accounts. It could be misunderstood. It could be that the words are not the same as sometimes. It's not what it appears. That's why the communication is there in the relationship. If the spouse, either one of them, is spying on the other one that shows lack of trust, maybe even misconstruing the facts in those emails, in this fact it was. It was used against the client just to embarrass and humiliate, to get advantage in the divorce proceeding. That's not what the law is for. What if she suspected him of child molestation? Well, God forbid, Your Honor. If she had... That would be protected also. That would be protected, but it was not. In this case, it was not. This is an act that under 18 U.S.C. 2511, it says intentional interception of electronic communication is prohibited. It's punishable by law, and a person has expectancy, a privacy expectancy under the law, that they can resume their conduct without the intrusion of others, not only your spouse, but anybody. This act itself doesn't prohibit any... You will concede, counsel, that this is a very unusual use of the Federal Wiretap Act in the context of interspousal snooping. Correct. This is the civil part of the criminal violations. Right. And even as such, it's a very unusual use of the act because expectations of privacy are diminished. This isn't a constitutional claim, but the reason for the statute, electronic privacy... Correct, but... ...is less implicated between spouses, I think, is to the point of Judge Posner's line of questioning. The fact is that there is no other case before this court... Oh, right. There's no case that limits it. Yes, that limits it. And also, even though we have the case that I can't even pronounce, the Smutsensky case from the Seventh Circuit, even there it said the statutory language of the Wiretap Act does not support inferential leap that one can take with the definition that electronic communications are excluded from the electronic communication. It is just that the law in itself provides a provision that protects everybody's individual civil liberty, civil rights. And if the law enforcement cannot enter into my computer or to my mailbox without the proper course... Neither can my wife. Okay, well, thank you. Ms. Lane. Mr. Schaffers. Judge Posner. Panel, may it please the court. Scott Schaffers on behalf of Defendant Paula Epstein. My ten minutes will be talking about the contemporaneous interception. Ms. DeGran's five minutes will be used for her client Jay Frank's issues. Judge Posner, your child molestation point. The case of U.S. v. Steiger out of the Eleventh Circuit, I believe it was in 01 or 02, that dealt with child molestation pictures. The court held that the anonymous informant's Trojan horse software where it grabbed the child molestation pictures and gave them to the government, that was not interception. You also asked what's the reason for the Federal Wiretap Act. Well, it's not for this. It's not for a wife finding adulterous emails, as you said, on a server. In Shemuskowitz. Oh, I'm sorry. There's nothing in the statute that prohibits it though. Yeah, I was just addressing Judge Posner's question. A reason would be, I'll pronounce it the Shemuskowitz case in 2010. Judge Easterbrook wrote it. That was an IRS agent putting an auto-forward rule on his supervisor's email account. Well, then that's a good reason to use the Wiretap Act. There's personnel privacy issues at play. There's taxpayer privacy issues at play, and the court upheld his conviction. Right, and the allegation is identical here, that the wife put an auto-forward rule on her husband's computer so that she would receive all of his emails. That's not the allegation, Your Honor. Well, that's exactly the allegation in paragraph 13 of the amended complaint. But the exhibits. No, the exhibits don't resolve this question one way or the other. It's a limited set of whatever it is she preserved and apparently re-forwarded sometime after the intercept. Recall the court is not bound by the plaintiff's characterization of the exhibit. Right, the point is that we can't characterize those exhibits one way or the other without taking some discovery. The district court just made a conclusion from the exhibits that there was no contemporaneous capture, and we just don't know that. The exhibits don't demonstrate that conclusively. They just show that at some point she got the emails, presumably at the time that they were transmitted, because the allegation is that she set up this auto-forward rule. And we have to accept that as true. So if we accept as true that she set up the auto-forward rule, then the Sinkevich case applies because that case says that's a contemporaneous capture or intercept by any definition. And the fact that she's got printouts that show that at some point after, whether two minutes, three hours, three days, three months, two years after, she forwarded them to herself at a different email address and saved them in a file, doesn't conclusively resolve whether there's been an intercept here, at least not without discovery. I submit that it does conclusively resolve for two reasons. First, plaintiff did not oppose our argument in her motion to dismiss response, in his motion to dismiss response, that the emails were not forwarded contemporaneously. If you don't oppose a motion to dismiss argument, you forever waive the opposition to that argument. They did not say in their motion to dismiss response brief March 5th of this year that the emails were not contemporaneously intercepted. So there's a waiver right there. Judge Durkin had nothing else to go on. All he had to go on were the exhibits to the complaint. And that's the second reason for my disagreement, Your Honor, is that every single email shows to, from, date, subject  Then it has the to, from, date of the forward, the subsequent forward by Ms. Epstein. That's the email that lays it out. Each email lays that out. I don't think you can draw any firm or accurate conclusions based on the printouts. And we have to read the printouts in the context of the allegation that she went on his computer and set up this auto-forward rule. And that, it seems to me, brings it within the confines of the Smiskevich case, which says that that sort of Internet capture is an interception under the Act. Well, I guess I do disagree that the emails don't say that themselves. But this brings me back to my first point, is that Judge Durkin had nothing else to go on.  Well, but the emails themselves, when I said in my opening brief, Right, but the emails themselves do not contradict the allegation conclusively. Okay, my initial point, though, was they didn't oppose my argument in my motion to dismiss. I said in my argument the emails themselves clearly show to, from, when of the initial email and then the subsequent to, from, when for the forward. In many cases, the forward was several years afterward. In many cases, they were months, days, hours afterward. That's what I said in my motion to dismiss brief. In the response, March 5th response, nothing, silence. So that was an admission that they were not contemporaneously coiling. Well, was the Smiskevich case cited in response? It was, but I believe only to discard its relevance. I believe she cited the Smiskevich, I'll just say Smiskevich, okay. She cited it to say that, well, there, I beg your pardon, Your Honor, I cannot recall exactly how they cited it in their response, but. That's kind of important, and this must, you know, may be just a product of having. But they, well, they distinguished Smiskevich in their response is my point. They didn't cite it with approval. Because Smiskevich said the auto-forwarding from the IRS agent's, I'm sorry, from the IRS agent's supervisor's account to the agent's account, that was contemporaneous by any standard. So I'll grant you that the Seventh Circuit probably stopped short of adopting, formally adopting the contemporaneity requirement, as did the other cases, right? But Judge Easterbrook said that that's contemporaneous by any standard. The agent gets a copy at the same time as the supervisor, that's contemporaneous by any standard. Also, at pinpoint page 704 of Smiskevich, Judge Easterbrook said, yeah, the email was caught in flight. The email was duplicated at the Kansas City server, the IRS's Kansas City server, so it was caught in flight. That's the same definition that Steiger gave contemporaneous interception 10 years earlier, eight, nine years earlier. So while there was no formal adoption, I'll grant you, I believe that there was the inclination that emails have to be intercepted contemporaneously with their initial transmission. With regard to whatever the auto-forward is, did she secretly adjust his computer so that it would be an auto-forward? No. Okay, so that's not, that would be contemporaneous. Yes, because that's what happened in Smiskevich. So there wasn't anything like that. No. Well, how do we know that? We're here on the pleadings. There's been no discovery. She hasn't been deposed on that question. I know I'm running the risk of disagreeing with Your Honor again, but I believe the emails do show that, and they were silent in any opposition to that. Oh, so you're just relying on the attached emails. You're not relying on any other evidence. I'm relying on the exhibits because they control over the body of the complaint. Yeah, and the emails themselves, which we said in our motion and Judge Durkan found in the response with not a word from Plaintiff otherwise. But only if that's the only possible interpretation of those emails, and I just have a hard time accepting that. Plaintiff accepted it. To dismiss the case based on the photocopies. I understand. Plaintiff accepted it, though, in her March 5th response that she accepted it. She asked for more discovery on behalf of her client. Well, but... To try to flesh out the allegation of the complaint that there was a contemporaneous capture. Here's the thing, Judge, and I guess this goes along with the point of Judge Posner's why are we here today, why are we using judicial time for this. Nobody told Plaintiff to run to federal court three days after he got these emails to sue his wife. If he thought he had a case, if he thought he had a claim, why run to court and plead something when you don't have a better grasp of what happened? He could have gone onto his computer and found out exactly what she thought she did. She could have hired any number of these forensic guys that he could have figured out what happened. But instead he ran to federal court with the purpose, I think, of blowing up the divorce trial, which was supposed to start two weeks later, and which did. And so you've got to get your ducks in a row before you run to 219 South and file a lawsuit. The fact that he did not, the fact that he did not oppose my argument, that they were not contemporaneously intercepted, and the fact that the emails themselves, I believe, show the initial transmission and the forwarding date, which are chasms apart, that I think is enough to dismiss. Although it is a limited universe of emails. Well, no, I don't think so. We don't know that. Plaintiff, I'm sorry. We don't know that it's the totality. Well, Plaintiff said they were the totality of them in her complaint, in his complaint, I'm sorry. They're only relying on, I'm seeing my time is running short. Okay. They're only relying on gaps in the Bates numbering. Anybody who's practiced long enough knows that gaps in the Bates numbering doesn't mean concealment. It just means that the staff or the litigation service just skipped a few numbers. They allege that they were all the emails. He's in control of his email inbox. He's in control of his email. And therefore, the district court was correct on the record, on the emails that they dumped into the complaint to dismiss under 12B6. Okay, thank you very much. Thank you, Judge. Thank you, Your Honor. Oh, yes, sorry. Ms. DeGrand. Good morning, Your Honors. Karen DeGrand on behalf of the appellee, Jay Frank. May it please the court, counsel. We adopt the codefendant's counsel's argument with respect to the interception requirements. And, of course, if the court determines to agree with that position, then there's nothing more to talk about with respect to Mr. Frank and the plaintiff doesn't contest that there has to be an interception under Section 1A for there to be any disclosure or use liability against Mr. Frank. But the discussion that we've had so far today, that the court has shown some of its thoughts about this case, I think is quite apt, especially with respect to Mr. Frank, where we're talking about the spirit but also the letter of the law, which I think calls for upholding the dismissal as to Mr. Frank. Because there's an independent basis, even if there is an interception to uphold the dismissal as to Mr. Frank. The gist of the use and disclosure theories that plaintiff has asserted against Mr. Frank are that he produced these e-mails in question to the plaintiff, the plaintiff's own counsel, in response to the plaintiff's own production request. So she's got sort of a new cast and a new theory of the disclosure idea in this court, which wasn't raised in the appellate court, so that the disclosure is not necessarily to basically the plaintiff himself, because it's a disclosure to the plaintiff's own counsel, which would seem to me to turn any type of logic on its head. But to other individuals in Mr. Frank's office, there's no factual basis asserted in the complaint for that conclusion. But is it implausible? Whether it's implausible, I don't know that it's implausible necessarily, Your Honor. But it does seem to me that in defending the point that I raised in my response, which was so you've now abandoned this other theory, the plaintiff is saying, well, no, the other staff or what have you, other people in the office, would have seen those e-mails in complying with this discovery request. So it seems to me that even if it's not implausible to say that perhaps a paralegal or a secretary may have stamped those base numbers, and whether that constitutes disclosure or the disclosure that's contemplated by the statute possibly is a matter for debate. But it certainly seems to me that the quote-unquote disclosure or the disclosure theory plaintiff is advancing now is also part and parcel of the response to the plaintiff's production request. So, again, all we were doing was complying with the plaintiff's request for producing the documents to plaintiff's own counsel. So it's in the nature of an invited disclosure? It's consent, yes, or even beyond consent, it seems to me. It was required for Mr. Frank and his client to comply with the Illinois discovery rules. It's required for Mr. Frank to comply with all the rules that apply to attorneys practicing law in the state of Illinois. He can't withhold things. So it seems to me that that cannot, by any type of rational interpretation of the statute, constitute disclosure. The use theory, I think, is something along the lines of her counsel, Mr. Frank, was using these e-mails, first of all, asking her to turn them over to him so that he could use them in the nature of a blackmailed settlement. In other words, to embarrass the husband to cave on the financial settlement. That's what I understand the use theory to be. There's absolutely no facts pleaded that support that theory. If the court looks at the amended complaint, if the court even looks at the description of the new use theory that the plaintiff presented to this court, that the plaintiff did not present in the district court, here are the facts that supposedly support, the quote-unquote facts, the allegations that support that theory, and that is that the plaintiff was able to locate and internet a website, divorce.com, where there was a Q&A, and the A was attributed to Mr. Frank, where the questioner said, well, gee, you know, can I do something with knowledge of my husband's infidelity in a divorce situation? And Mr. Frank said, well, it doesn't, you know, he gave a general answer as to what possibly could be done, which is not much, with that kind of information. And to take that and say that that's a leap to, this is definitely what his litigation strategy was, I think is quite implausible. Well, there are allegations about that in the complaint. I mean, the complaint is not devoid of those allegations. It talks about his litigation strategy and tactic of embarrassing the husband to effectuate a favorable settlement for the wife. That's on page 5 in a couple of different numbered paragraphs. So we do have that theory alleged, or that, you know, facts alleged. The basis is this Internet site, locating this Internet site, and there's no allegation that says that there was any kind of negotiations going on. And if the court looks at the plaintiff's – Right, and that may be something for summary judgment. We're here on the pleadings. But even on the pleadings, Your Honor, look at the plaintiff's response in the district court. The plaintiff responded without any equivocation in the district court to the motion to dismiss by saying, well, it was intended to be used. It was intended to be used. And that's what the argument was that was presented to the district court judge. And he said, well, there's nothing in the statute about an intent to use later. It's either use or endeavor to use. And so that was the plaintiff's own position. And now we have – and that didn't work. So now in this court, there's a contradiction of that, and I don't think that's appropriate. It's not appropriate even under the liberal pleading standards of the court in the 12B6 situation. And I will just briefly also mention, because I know my time is up, that we also have a heightened knowledge requirement with respect to the knowledge in use. And where is the allegation that Mr. Frank – it's a pretty heightened standard. It knows that it's intercepted, knows it's an intercepted electronic transmission, and beyond that has factual information showing that it was an illegal interception. And there is not one whit of allegation that supports that conclusion. Thank you very much, Your Honor. Thank you, Ms. DeGran. Ms. Lane. Ms. Lane. Thank you, Your Honor. First, I would like to clarify we got off of our topic when you, Judge Posner, stated the moral grounds for what's the violation, what's the damage. We are not here because at the 12B6 motion to dismiss in a district court where it's notice pleading, we didn't have discovery. We are here that we believe that it was improperly dismissed and we didn't have a chance for discovery. And I just want to make that clear. And if we had the trial, the statute is good as we see from the statute. There was a violation in the statute, but the procedural mistake is what we are here for. Then before I want to touch as fast as I can through it, when the counsel explained that Mr. Epstein could have done his own investigation before running to the courts, well, to do that, you do need the computer of the individual who has intercepted this mail. She was already moved out. The computer is not here. Wouldn't his own computer show whether or not the auto-forward functionality had been engaged? Not necessarily because in the world of electronic internet world, you can access that email address from anywhere. It's Yahoo, Gmail, whatever it is. Right, but your allegation was that she went on his computer and engaged that function. Well, there was not sufficient discovery, but even if it was. Well, it's his own computer. If we had received a discovery to have our examiner go check it out, we probably would have examined it. But it's your own client's computer. Correct. You don't need discovery for that. But we don't know if it's. . . All you need to do is have a computer geek come in and tell you what's on there. Again, we believe that is not an issue here. As I stated, we are here for the procedural ground. Also, with respect that the counsel mentioned the Seventh Circuit Smiczynski case, that was dismissed after a summary judgment. They did have the benefit of a discovery. We didn't have the benefit of a discovery. It was actually a criminal case. The Smiczynski case? Correct. But they had discovery. It was dismissed on the motion for summary judgment. Actually, he was convicted. Okay, the earlier. . . Okay, I apologize. You're a divorce lawyer. I understand. And with regards to the counsel stating that I waived my arguments because I didn't say anything. Well, you can only say so much in a pleading, and we believe it is well settled in the Seventh Circuit that when reviewing the 12B6 motion, lower court or higher court, that we can address these issues, even if we hadn't addressed it before. Procedurally, it would be correct. With regards to the allegation of J. Frank's use or disclosure of it, first, there was no proper procedure. Criminal law 101 tells you your client's previous or prior crimes. You cannot. . . You have to conceal it. You cannot take the fruits of that illegal act and use it as an attorney. Even in criminal cases, you know that you cannot use the fruits of the poisonous tree, so to speak. And also with the contemporaneousness, as they have stated, the language itself does not provide that it requires, even though we are here for the procedural aspect, but I believe just to mention, the act itself does not require contemporaneous. The Congress did not intend that it includes. . . Let me go with the intent of the. . . I'm running out of time. I apologize. The OTA report that they relied on stated specifically that email communication could be intercepted. The word interception maybe is not exactly correct because that's the judicial interpretation of it, because the intercept was defined in itself. And the report stated that the emails could be intercepted in five stages, and it includes that in there. It can be intercepted at the terminal or the electronic files of the sender. It can be intercepted while being communicated because when you play with the emails, it's only seconds when you press the button. It's impossible with the Webster dictionary or the textbook definition to intercept an electronic email when you just press the button and then it starts copying, going to different routes. And as Smitsinsky case identified, it stated there could be other issues why there could be a minute or two delay. So that delay could be contributed to see even if it's. . . Okay. Thank you, Ms. Smith. You'll have to end now. Thank you, Your Honors.